Pamela Kay **GIANGROSSO**, Appellant,

v.

William Randal **CROSLEY**, Appellee.

No. 01–91–00947–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Oct. 29, 1992.

Maurice Bresenhan, Jr., Campbell, Zukowski, Bresenhan & Woods, L.L.P., Houston, for appellant.

Dianne Richards, Houston, for appellee.

Before OLIVER–PARROTT, C.J., and O'CONNOR and WILSON, JJ.

## OPINION

O'CONNOR, Justice.

This Court is asked to determine whether a trial court abused its discretion in modifying a child support order. We find that it did not and affirm.

In 1981, the appellant, Pamela Kay Giangrosso, and the appellee, William Randal Crosley, were divorced. In 1982, the court signed a child support order and named William as managing conservator of the two minor children. The order did not require Pamela to pay child support.

In 1990, William filed a motion to modify the child support order, requesting that Pamela pay child support for their child, Ryan.[1] In the final judgment on the motion to modify child support, the trial court ordered Pamela to pay child support in the amount of $335 per month. From that judgment, Pamela appeals.

### Fact summary

Presently, William is working as a car salesman without salary, commission only. He previously worked in sales and marketing for several companies. William has had no income for the past four or five months and has supported himself with $9,000 annual income from stock of a Subchapter S corporation, which is a family-owned business. William's present wife is a registered nurse employed by Baylor College of Medicine.

William testified to the changed conditions since he first got custody of the child:

Ryan was only two and a half years old then, and now he is 11; Ryan plays sports, which cost about $300 to $400 a year; Ryan is also involved in other extra-curricular activities, which cost money; Ryan needs more clothes now than he did when he was small; Ryan's medical insurance costs $75 per month through William's wife's medical insurance; Ryan needs braces, which are expensive; William would like to send Ryan to summer camp this year; and generally, it costs more to raise an 11–year old than a two- or three-year old.

William offered the following letter from Pamela into evidence which the court admitted:

1–15–91

I want to arrange for monthly weekend visitations, alternating Thanksgiving and Christmas holidays, and three to four weeks during the summer, depending on the end of baseball season, probably four weeks. I want to continue helping with the clothes expenses and special things I know about in advance. I don't want to commit to any court order as I will be in school full time and not working. I would like to agree on something, but if we can't, I will file other lawsuits that will drag on for four or five years. I don't have much interest in doing this but I have less interest in court-ordered child support.

I will be available Sunday night or Monday at [telephone number].
　　Sincerely,
　　Pam

At the time of the hearing, Pamela had not registered for school.

William testified Pamela was qualified to work as a medical technologist. In 1978, she made about $1,000 to $1,100 a month. He said medical technologists make about $25,000 to $30,000 a year now. Pamela has never paid any child support during the nine years William has had custody of the children. She occasionally makes gifts to

---

1. William and Pamela's daughter, Vanessa, is over 18 years of age and lives with Pamela's parents. Pamela contributes $275 per month toward Vanessa's support. Pamela has also committed to pay $4000 a year for Vanessa to attend the University of Texas.

the children, representing about $200 a year.

Pamela is a high school graduate with three years of college with a major in biology. Pamela was employed before 1983 as a research technician, earning $18,000 a year. Pamela was not employed at the time of the first order. In 1981, she married Dr. Giangrosso, who is a chiropractor and an attorney. In 1988, working 11 months, she earned $18,000. In 1989, Pamela worked in her husband's chiropractic office as the office manager, but she did not take a salary. She testified the office was in bankruptcy; she admitted the going rate for an office manager in 1989 was between $15,000 and $16,000. Her husband's reported gross receipts from his practice for 1988 was about $98,000. Pamela stated she does not want to commit to any court-ordered support, because she plans to be in school full time, although she has not been accepted to any school. Pamela last visited Ryan in December of 1990. The order she challenges by this appeal was signed on July 3, 1991.

## 1. Child support order

█ In point of error one, Pamela argues the first order, which did not require her to pay child support, was a contract with William. Thus, Pamela contends William is barred from later seeking any modification.

█ If a child support agreement specifically provides it will be enforced as a contract, the court cannot modify the terms of support absent proof of the legal prerequisites for modification of a contract: fraud, accident, or mistake. *Hoffman v. Hoffman*, 805 S.W.2d 848, 850 (Tex.App.— Corpus Christi 1991, writ denied). If a party asks a court to modify a child support agreement that has been incorporated into a court order or decree, however, the court has the authority to do so. *Leonard v. Lane*, 821 S.W.2d 275, 277 (Tex.App.— Houston [1st Dist.] 1991, writ denied); *Hoffman*, 805 S.W.2d at 851.

William's motion requested a modification of the court order which was issued after the divorce decree. The motion to modify, thus, goes to the court-ordered support rather than to any contractual agreement the parties might have made. The trial court did not abuse its discretion in modifying the first support order.

We overrule point of error one.

## 2. Evidence supporting the modification

█ In point of error two, Pamela argues the evidence is legally and factually insufficient to support the modification of the first order. Pamela contends the evidence is insufficient to support the trial court's decision that there has been a material and substantial change of circumstances or that $335 is the appropriate amount of child support. We disagree.

█ In reviewing legal insufficiency points of error, we consider only the evidence and inferences that, when viewed in their most favorable light, tend to support the finding and disregard all evidence and inferences to the contrary. *Davis v. City of San Antonio*, 752 S.W.2d 518, 522 (Tex. 1988). If there is more than a scintilla of evidence to support the finding, we must overrule the legal insufficiency points of error. *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex.1987).[2]

█ In reviewing factual insufficiency points, once we examine all of the evidence relating to a finding, we can only set aside the finding if it is so against the great weight and preponderance of the evidence that it is clearly wrong and manifestly unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951); *Glockzin v. Rhea*, 760 S.W.2d 665, 666 (Tex.App.— Houston [1st Dist.] 1988, writ denied). We cannot substitute our opinion for that of the trier of fact to determine if we would reach a different conclusion. *Glockzin*, 760 S.W.2d at 666.

█ Pamela made no request for findings of facts and conclusions of law under TEX.FAM.CODE ANN. § 14.057 (Vernon Supp.

---

**2.** A "scintilla" of evidence does no more than create a mere surmise or suspicion of its existence. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983).

1992) or under Tex.R.Civ.P. 297. At the end of the hearing, the trial court orally announced its findings, but those findings were not incorporated into the child support order, as required by section 14.057, and were not filed as separate findings, as required by rule 297. The appellate courts are not entitled to look to any comments of the trial court at the conclusion of a bench trial as a substitute for findings of fact and conclusions of law. Tex.R.Civ.P. 296; *In the Interest of W.E.R.*, 669 S.W.2d 716, 716 (Tex.1984).

When no findings of fact are filed, the courts imply all the necessary findings to support the judgment. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990); *In re Estate of Johnson*, 781 S.W.2d 390, 391–92 (Tex.App.—Houston [1st Dist.] 1989, writ denied). Implied findings of fact, like the trial court's findings, may be challenged by legal and factual sufficiency points of error. *Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex.1989).

If there is evidence to support the implied finding of fact, the appellate court must uphold the judgment on any theory of law applicable to the case. *W.E.R.*, 669 S.W.2d at 717; *M.R.S. Datascope, Inc. v. Exchange Data Corp., Inc.*, 745 S.W.2d 542, 544 (Tex.App.—Houston [1st Dist.] 1988, no writ).

A district court may modify the portion of a decree that provides for the support of a child only if the circumstances of the child or a person affected by the decree to be modified have materially and substantially changed since the entry of the decree. *Werlein v. Werlein*, 652 S.W.2d 538, 540 (Tex.App.—Houston [1st Dist.] 1983, no writ); Tex.Fam.Code Ann. § 14.08(c)(2) (Vernon Supp.1992). In making its determination, the trial court is given broad discretion in setting and modifying child support payments, and absent a clear abuse of discretion, the trial court's order will not be disturbed on appeal. *Billeaud v. Billeaud*, 697 S.W.2d 652, 654 (Tex.App.—Houston [1st Dist.] 1985, writ denied).

Here, the record shows the circumstances of the parents and the children have materially and substantially changed since the entry of the original divorce decree. William testified Ryan, who was only two at the time of divorce, is now 11 and more expensive to care for and support. He stated, given his son's age, he must now pay for such increased costs as clothing and sporting activities. This testimony alone could serve as evidence that the child's situation has so substantially changed as to warrant an increase in child support obligations. A parent's testimony showing a substantial increase in the designated expenses for a child can be legally sufficient evidence to support a trial court's finding of a material and substantial change in the situation of the child. *Arndt v. Arndt*, 685 S.W.2d 769, 770 (Tex. App.—Houston [1st Dist.] 1985, no writ).

The record also reflects William's financial situation has undergone a material and substantial change. Although at the time of the divorce he was working in sales and marketing for several different companies, after losing these jobs he suffered a substantial decrease in earnings when he took a job as a car salesman. He now works with no salary, but commission only. William's income has so substantially decreased that he has had to support himself for the past four or five months with a $9,000 annual income from the stock from a family-owned business. Evidence of a decrease in the income of a parent who is providing child support and an increase in expenses can be sufficient to establish a material and substantial change in the circumstances of the parties. *See Power v. Power*, 720 S.W.2d 683, 685 (Tex.App.— Houston [1st Dist.] 1986, writ dism'd).

Pamela argues that because the record shows neither a history of her actual earnings nor evidence of her capacity to earn a substantial sum of money, she should not be required to pay monthly child support. The duty to support, however, is not limited to a parent's ability to pay from current earnings, but extends to his or her financial ability to pay from any and all sources that might be available. *Hazel-*

*wood v. Jinkins,* 580 S.W.2d 33, 37 (Tex. App.—Houston [1st Dist.] 1979, no writ); *Pharo v. Trice,* 711 S.W.2d 282, 284 (Tex. App.—Dallas 1986, no writ). Thus, a court may take a parent's earning potential into account when determining the amount of child support the parent must pay. *Id.* A parent who is qualified to obtain gainful employment cannot evade his or her support obligation by voluntarily remaining unemployed. *Eggemeyer v. Eggemeyer,* 535 S.W.2d 425, 427–28 (Tex.App.—Austin 1976), *aff'd,* 554 S.W.2d 137 (Tex.1977); *see Pharo,* 711 S.W.2d at 284 (mother was ordered to pay child support even though she was not employed; she had worked as an airline stewardess; currently she was spending her time researching genealogy, playing tennis, helping friends put together a cookbook, and volunteering for the Dallas Medical Auxiliary); TEX.FAM.CODE ANN. § 14.053(f) (Vernon Supp.1992).

Pamela testified she has completed three years of college and received training as a medical technician. She has not worked in this capacity since 1983 and has worked for a salary for only a single year since the divorce. Although Pamela might have to be retrained before she would be employable, she possesses the general skills and experience that would qualify her for employment. Yet, Pamela has voluntarily chosen to remain unemployed. This cannot serve as an excuse for avoiding child support obligations. *Eggemeyer,* 535 S.W.2d at 427–428.

The record clearly supports a finding that the circumstances of the parties have materially and substantially changed. Thus, the trial court did not abuse its discretion in modifying the first child support order.

In the alternative, Pamela argues the evidence was insufficient to support the decision by the trial court that the appropriate amount of monthly child support to be paid by her is $335. Again, we disagree. Pamela testified she has earned in past years approximately $18,000 a year. William testified she is capable of earning at least $25,000 a year. The trial court determined Pamela had the ability to earn

$1,600 gross monthly income, which would produce a net income of $1,300 a month. TEX.FAM. CODE ANN. § 14.053(h) (Vernon Supp.1992).

Applying the child support guidelines set out in the Texas Family Code, the trial court then determined 20 percent of her net resources ($1300) would be $260. TEX.FAM. CODE ANN. § 14.055(b) (Vernon Supp.1992). Adding $75 for the necessary health insurance, the trial court calculated the appropriate child support to be $335 a month. TEX.FAM. CODE ANN. § 14.053(d) (Vernon Supp.1992).

The trial court did not abuse its discretion in ordering the appellant to pay child support in the amount of $335 per month. We overrule the appellant's point of error two and affirm the judgment.